UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| | ) | Case No. 1:10-CR-56 |
| vs. | ) | |
| | ) | |
| | ) | |
| JERMAINE HOWARD | ) | COLLIER/CARTER |

REPORT AND RECOMMENDATION

I. Introduction

This matter came before the undersigned pursuant to 28 U.S.C. §§ 636(b)(1)(B)and(C) to conduct such evidentiary hearings as deemed necessary and to issue a report and recommendation as to the defendant's mental competency to stand trial and sanity at the time of the offense.

Those appearing before the undersigned at the mental competency hearing on Thursday, November 4, 2002 included the following:

1. Asst. United States Attorney Jay Woods
2. Defendant Jermaine Howard
3. Attorney John Allen Brooks for defendant
4. Dr. Manuel E. Gutierrez, Forensic Psychologist, FMC Butner, NC (by video conference)
5. Dr. Prameet Bhushan, Psychiatrist

Motion for Psychiatric and Medical Examination

A motion was filed in this case on May 4, 2010 by defendant moving the Court for an evaluation to determine if defendant was competent to stand trial. [Doc 14]. At the hearing on this motion Counsel asked for an evaluation of sanity at the time of the alleged offense. The Court entered an order on May 20, 2010 granting a psychiatric/psychological evaluation to

1

determine (1) whether the defendant is suffering from a mental disease or defect rendering him mentally incompetent to the extent he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense and (2) defendant's sanity at the time of the offense [Doc. 19]

Dr. Manuel E. Gutierrez, forensic psychologist at the Federal Bureau of Prisons in Butner, North Carolina, testified at the November 4, 2010 hearing. During most of the hearing defendant Howard appeared to stare blankly and reacted little to any of the testimony presented. Dr. Gutierrez testified he participated in the evaluation of defendant Jermaine Howard and the record reflects he wrote the report (Doc. 26) after an evaluation that was conducted between June 8, 2010 and July 26, 2010. He testified to his educational background and some nine years of experience as a forensic psychologist, during which time he has conducted close to 400 forensic evaluations. He has worked at Butner, North Carolina for four years and is licenced to practice clinical psychology in the State of North Carolina.

Dr. Gutierrez reviewed defendant's criminal history and was provided with treatment records from Moccasin Bend Mental Health Institute in Chattanooga. He also reviewed a prior forensic evaluation conducted in 1994 in the Butner, North Carolina facility. That evaluation concluded Defendant Howard was competent to stand trial and was sane at the time of the offense related to that earlier hospitalization.

During the present 6 to 7 week evaluation, Dr. Gutierrez saw defendant once a week or more and also received reports from other staff members, unit team members, a counselor and defendant's case manager, all of whom related appropriate behavior by defendant Howard during his stay at the facility. Dr. Gutierrez observed defendant both in and outside of a clinical setting.

He reviewed the battery of tests conducted during the evaluation which are set out in detail on page 2 of his report and will not be repeated herein. One of the tests, the Georgia Court Competency test was given to determine if defendant had the requisite ability to proceed in court. That test is used to assess a persons factual understanding of the charge, who the attorneys are and what they do, and the function of the judge. Defendant's scores on this test were deemed satisfactory. Dr. Gutierrez was aware of defendant Howard's past mental illness which includes multiple hospitalizations and reports of hallucination, paranoia, inappropriate anger and volatile mood (Forensic Evaluation, page 4). On various previous occasions he had been treated with anti-psychotic medications, after which his symptoms would abate. The report recounts four separate hospitalizations at Moccasin Bend and defendant Howard reported other hospitalizations.

The diagnostic impressions of defendant are found in the Forensic Evaluation dated August 4, 2010. The diagnosis, based on criteria set forth in the *Diagnostic and Statistic Manual of Mental Disorders*, *Fourth Edition*, *Text Revision (DSM-IV-TR)* is as follows:

>   Axis I       Psychotic Disorder Not Otherwise Specified, 298.9
>                (Prior History)
>
>   Axis II      Antisocial Personality Disorder, 301.7
>
>   Axis III     No Diagnosis
>
>   Axis IV      Problems related to interaction with legal system/crime
>
>   Axis V       Global Assessment of Functioning (GAF) = 70

(Forensic Evaluation at 8 and 9).

It was determined that defendant had a significant mental health problem. Dr. Gutierrrez noted defendant satisfies sufficient criteria for a diagnosis of Antisocial Personality Disorder,

which includes failure to conform to social norms with respect to lawful behaviors as indicated by repeatedly performing acts that are grounds for arrest; impulsivity or failure to plan ahead and irritability and aggressiveness.  However, the conclusion of the report and of Dr. Gutierrez is that the defendant is competent to stand trial.  Dr. Gutierrez spelled this out in detail in his report as follows:

> Competency to stand trial includes a factual and rational understanding of the nature and consequences of court proceedings, as well as the ability to assist and work with a defense attorney. In terms of factual understanding, Mr. Howard demonstrated good comprehension of the legal system, as he provided correct and detailed answers regarding the roles and responsibilities of the judge, jury, prosecutor, defense attorney, and witnesses. The defendant reported he has been charged with "possession a firearm, a 12-gauge shotgun, sawed-off."  Mr. Howard is aware of his plea options and the parameters of a plea bargain. Additionally, he recognizes that he is facing a potential prison sentence if convicted of the alleged offenses. The defendant indicated that the penalty could be "15 (years) to life." Overall, it is believed that Mr. Howard's prior interactions with the judicial system have provided him with a sound base of factual knowledge.
>
> With respect to rational understanding, the defendant's statements reflected a coherent, non-delusional understanding of his current legal situation. He displayed no distorted thoughts or unusual beliefs about his charges. Mr. Howard indicated that he intends to proceed to trial because he is "innocent." When asked if he could be treated fairly by the judicial system, the defendant replied, "I'm cautious. The system is flawed and not perfect. Innocent people can be convicted." Mr. Howard recognized he needs to observe proper decorum w hen in court, and that he needs to address the judge through his attorney. His comportment throughout the clinical interviews and testing sessions indicates that he possesses the necessary internal controls to behave appropriately in a courtroom setting.
>
> The defendant reported he is being represented by Mr. Brooks. Mr. Howard noted he has met with counsel on numerous occasions, sometimes several times per week. The defendant joked that the number of visits seemed excessive at times, adding that other jail inmates suspected he might be cooperating with authorities, due to the volume of meetings. Mr. Howard has a favorable opinion of his attorney, and he stated, "He's a good lawyer, one of the best in Tennessee . .  I'm lucky." The defendant advised that he can assist Mr. Brooks by "giving him the facts of the case. Help him see what's going on."  During the course of the study,

4

> Mr. Howard and his lawyer were able to speak by telephone, and this psychologist was present in the office where the defendant was located. (All parties understood that this examiner was present and would hear Mr. Howard's end of the conversation.) Throughout the telephone call, it appeared that the defendant enjoyed a positive relationship with his attorney and that he sought and respected Mr. Brooks' advice.
>
> In summary, it is believed the Mr. Howard possesses adequate factual and rational understanding of the proceedings against him. Additionally, he is able to assist counsel in his defense. Thus, it is opined that the defendant is competent to stand trial.

(Forensic Evaluation Report at 10, 11).

As to the question of insanity at the time of the offense or criminal responsibility, it was the opinion of the Forensic Team that Mr. Howard was criminally responsible for his behavior. The report describes the standard for a finding of insanity as follows

> It is an affirmative defense to a prosecution under any Federal statute that, at the time of the commission of the acts constituting the offense, the defendant, as a result of a severe mental disease or defect, was unable to appreciate the nature and quality or the wrongfulness of his acts. Mental disease or defect does not otherwise constitute a defense.

(Forensic Evaluation Report at 11).

> Dr. Gutierrez concludes Howard was sane as set out below:
>
> Although Mr. Howard has previously suffered from symptoms of mental illness, specifically features of psychosis, there is no evidence to indicate that he was experiencing such symptoms at the time of the instant offenses. The police reports suggest that he behaved and responded appropriately when questioned by the authorities. Furthermore, there are no known collateral sources of information that lead to the conclusion that the defendant was unable to recognize the illegality of his actions. Considering the likelihood that he was the business of selling a controlled substance, it is not unexpected that he would be in possession of a firearm.
>
> As part of this evaluation, Mr. Howard was assigned diagnoses of Psychotic Disorder Not Otherwise Specified (Prior History) and Antisocial Personality Disorder. However, there is no indication that he was experiencing severe symptoms of mental illness that would have adversely affected his mental status

> at that time. Furthermore, the police reports appear unremarkable as far as noting any bizarre behaviors on the part of the defendant. Therefore, it is this examiner's opinion that Mr. Howard was not suffering from a severe mental disease or defect that rendered him unable to appreciate the nature and quality or wrongfulness of his actions.

(Forensic Evaluation at 11).

No other evidence was presented by defendant to contradict the findings contained in the forensic evaluation report. However, I note that the question of sanity at the time of the offense is a question for the jury but, based upon the available evidence, it does not appear that Mr. Howard was insane at the time of the offense.

After Dr. Gutierrez concluded his testimony, counsel for defendant presented further testimony from Dr. Prameet Bhushan, a psychiatrist who provides services to Silverdale detention facility. Dr. Bhushan saw Mr. Howard on September 10, 2010 at the detention facility after he was returned from Butner, North Carolina. Based on the history Mr. Howard presented and a clinical interview which lasted ten to fifteen minutes, Dr. Bhushan prescribed an anti-psychotic medication. He also prescribed Trazadone which he testified was commonly used as a sleep aid. Dr. Bhushan did not give an opinion related to Mr. Howard's competence to stand trial or any opinion related to the issue of sanity at the time of the offense. At the conclusion of his testimony, which was given in the presence of Dr. Gutierrez, through the use of video conference equipment, Dr. Gutierrez indicated the fact Mr. Howard was subsequently placed on anti-psychotic medication did not change his opinions previously given.

## II. Conclusion

Having carefully reviewed the pleadings and the evidence presented at the November 4,

2010 hearing and considering the opinion of Dr. Gutierrez from his testimony and the report and further considering the testimony of Dr. Bhushan, I RECOMMEND[1] the Court find the defendant Jermaine Howard competent to understand the nature and consequences of the proceedings against him and able to assist in his defense.

                                               *s/William B. Mitchell Carter*
                                               UNITED STATES MAGISTRATE JUDGE

---

[1] Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b) of the Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140, 88 L.Ed.2d 435, 106 S.Ct. 466 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive or general. *Mira v. Marshall*, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Federation of Teachers*, 829 F.2d 1370 (6th Cir. 1987).